UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BARRY A. ELIZANDO,

        Case No. No. 13-12165

    Plaintiff,        District Judge Matthew F. Leitman

v.        Magistrate Judge R. Steven Whalen

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
                                 /

**REPORT AND RECOMMENDATION**

       Plaintiff Barry A. Elizando brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits under Title II of the Social Security Act. Parties have filed cross motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be GRANTED [Docket #12] and that Plaintiff's Motion for Summary Judgment be DENIED [Docket #9].

**I.   PROCEDURAL HISTORY**

       Plaintiff applied for Disability Insurance Benefits ("DIB") on April 23, 2010, alleging disability as of September 8, 2009 (Tr. 142-144). Upon initial denial of the claim, Plaintiff requested an administrative hearing, held on October 20, 2011 in Flint, Michigan before

Administrative Law Judge ("ALJ") Regina Sobrino (Tr. 41).  Plaintiff, represented by attorney Mikel Lupisella, testified, (Tr. 45-56), as did vocational expert ("VE") Anne Trembly (Tr. 57-60).  On January 6, 2012, ALJ Sobrino found Plaintiff not disabled (Tr. 35-36).

On March 19, 2013, the Appeals Council declined to review the administrative decision (Tr. 1-6).  Plaintiff filed suit in this Court on May 15, 2013.

## II.  BACKGROUND FACTS

Plaintiff, born April 12, 1967, was 44 at the time of the administrative decision (Tr. 36, 142).   He completed 12th grade and worked previously as an assembly worker, paint associate, and sales associate (Tr. 160).  He alleges disability as a result of back pain, arthritis, hypertension, and hyperlipidemia (Tr. 159).

### A. Plaintiff's Testimony

*Plaintiff's counsel prefaced his client's testimony by amending the alleged onset date to September 8, 2010* (Tr. 44).

Plaintiff offered the following testimony:

He currently lived in Flint, Michigan with his eight-year-old daughter (Tr. 45).  He had not worked since September 8, 2009 due to a back injury (Tr. 46).  He was unable to stand for more than 30 minutes, walk for more than 40, or sit for more than 15 (Tr. 46-47).  Right leg discomfort created difficulty sitting for extended periods (Tr. 47).  He had used a

cane on an intermittent basis since 2009 (Tr. 46).

Plaintiff was unable to lift more than a gallon of milk but did not experience hand problems (Tr. 48). He experienced limitation in reaching, bending, crouching, and climbing stairs due to back pain (Tr. 48). He could cook, clean, perform laundry chores, shop for groceries, and socialize with his friends (Tr. 49). He was unable to engage in his former hobbies of hunting, fishing, and camping due to physical limitations (Tr. 49). He currently took Flexeril and Oxycodone for back pain and morphine on an "as needed basis" since undergoing surgery four months earlier (Tr. 51). He experienced the side effects of drowsiness and sleep disturbances as a result of the Oxycodone use (Tr. 52). He denied mental health treatment (Tr. 54).

In response to questioning by his attorney, Plaintiff testified that his condition required him to take daily naps lasting between one and two hours (Tr. 54). He reported concentrational problems as a result of pain (Tr. 55).

### B. Medical Records

#### 1. Records Pertaining to Plaintiff's Treatment

September, 2009 imaging studies of the lumbar spine showed mild spondylolisthesis at L4 and L5 with advanced arthritic changes (Tr. 216). Studies performed the following month also showed mild stenosis at L4 and L5 and a mild compression deformity at T12 (Tr. 224). Neurologist Avery Jackson, III, M.D. advised Plaintiff to undergo steroid injections and "home therapy," opining that surgery was not warranted (Tr. 249). Treating notes from

the same month state that Plaintiff underwent injections (Tr. 250, 303). Treating physician Douglas Benton, D.O. remarked that the onset of back pain occurred gradually over the course of five years (Tr. 301). He noted that Plaintiff was in no acute distress (Tr. 301). A November, 2009 x-ray of the chest was unremarkable (Tr. 304). December, 2009 physical therapy discharge notes state that Plaintiff experienced a 20 percent improvement in lower back pain (Tr. 234). He was advised to begin a home exercise program (Tr. 234). Neurological treating notes from the same month state that Plaintiff had full muscle strength in the lower extremities and a normal mood and affect (Tr. 253). Dr. Jackson reiterated that Plaintiff did not require surgery (Tr. 255).

Plaintiff underwent seven epidural injections between January and March, 2010 (Tr. 262-264). January, 2010 treating notes state that he appeared alert and fully oriented (Tr. 264). In March, 2010, John C. Kohn, D.O. noted Plaintiff's report that the steroid injections did not relieve his pain (Tr. 289). He recommended that Plaintiff obtain an evaluation by a neurosurgeon or orthopedic surgeon (Tr. 289). Dr. Benton's notes from the following month state that Plaintiff was informed by a specialist that he was not a good candidate for surgery (Tr. 271). In May, 2010, Dr. Benton prescribed Ultram for continued back pain (Tr. 270). In November, 2010, Dr. Benton described the back pain as "non-radiant" (Tr. 335).

Dr. Benton's May, 2011 treating records state that Plaintiff experienced anxiety regarding upcoming back surgery, but "no emotional problems" (Tr. 328-329). Later the same month, Frank La Marca, M.D. performed a laminectomy (Tr. 350). Treating notes from

the following month state that Plaintiff was "doing well" following the back surgery (Tr. 326). July, 2011 physical therapy intake records note that Plaintiff was a good candidate for physical therapy (Tr. 339). Dr. La Marca noted that Plaintiff reported significant improvement in pain levels and exhibited full muscle strength in the lower extremities five weeks after surgery (Tr. 348).

### 2. Non-Treating Sources

In September, 2010, R. Scott Lazzara, M.D. performed a consultative physical examination on behalf of the SSA, noting Plaintiff's report of severe back pain since an August, 2009 workplace injury (Tr. 307). Plaintiff acknowledged that despite a medical leave from work, he was able to drive, cook, perform light household chores, read, and watch television (Tr. 307). He reported that he could walk more than one mile but was unable to sit or stand in one position for more than 20 minutes (Tr. 307). Dr. Lazzara's examination was unremarkable with the exception of mild range of motion limitations of the lumbar spine (Tr. 308). Dr. Lazzara observed a normal gait without the aid of an assistive device and "mild discomfort" (Tr. 308-309).

In May, 2011, Nathan L. Gross, M.D. conducted an independent medical examination related to Plaintiff's claim for Workers' Compensation benefits (Tr. 343-344). He observed that Plaintiff was able to walk without problems and did not experience sensory loss (Tr. 343-344).

### 3. Evidence Provided After the January 6, 2012 Administrative Decision

October, 2011 imaging studies of the right knee showed mild degenerative changes (Tr. 378-379). Plaintiff reported back stiffness but no numbness or weakness (Tr. 370). He described his pain level as a "six" on a scale of one to ten (Tr. 368-370). In February, 2012, Plaintiff reported the "gradual onset of constant episodes" of moderate depression over the past month (Tr. 365). A March, 2012 x-ray of the lumbar spine was unremarkable (Tr. 372). The same month, he reported radiating bilateral back pain (Tr. 359).

### C. Vocational Testimony

VE Trembley classified Plaintiff's past work as an operator/assembler as exertionally medium and semiskilled and work as a sales clerk as heavy and semiskilled[1] (Tr. 56). The ALJ then posed the following set of limitations to the VE, describing a hypothetical individual of Plaintiff's age, education, and work experience:

> [A]ssume a person who is limited to performing sedentary work . . . . In addition, the person should be able to alternate sitting and standing when they want to do that; the person should not need to climb ladders or stairs; can only occasionally balance and stoop; should not have to kneel, crouch, or crawl;

---

[1] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

assume that there should be no reaching above shoulder level requred and only frequent reaching in other directions; there should be no exposure to hazards or to vibration and no use of foot or leg controls; the person should be [able] to use a cane to walk if they want to do that; assume a limitation to simple, routine, repetitive work involving one or two-step tasks (Tr. 57).

The VE found that the above limitations would preclude Plaintiff's past relevant work, but would allow the hypothetical individual to perform the sedentary, unskilled work of an assembler (2,000 positions existing in the State of Michigan); inspector (1,000); or packager (2,100) (Tr. 58). The VE stated that her testimony was consistent with the information found in the Dictionary of Occupational Titles ("DOT") (Tr. 58).

In response to questioning by Plaintiff's counsel, the VE stated that the need to "lie down periodically at unpredictable times" during the workday would preclude all gainful employment (Tr. 59).

### D. The ALJ's Decision

Citing the medical records, ALJ Sobrino found that Plaintiff experienced the severe impairments of degenerative disc disease and hypertension but that neither condition met or equaled a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 29). The ALJ determined that Plaintiff had the Residual Functional Capacity ("RFC") for light work with the following additional restrictions:

> [T]he opportunity to alternate sitting and standing at will; no climbing of ladders or stairs; occasional stooping and balancing; no kneeling, crouching, or crawlingt; no reaching above shoulder level; no more than frequent reaching in other directions; no exposure to hazards or vibration; no use of foot or leg controls; use of a cane to walk (Tr. 30).

Citing the VE's testimony, the ALJ determined that while Plaintiff was unable to perform his past relevant work, he could perform sedentary work as an assembler, inspector, or packager (Tr. 34-35).

The ALJ discounted Plaintiff's allegations of disability, citing Dr. Lazzara's September, 2010 observations of a normal gait, good concentration, and the absence of muscle atrophy (Tr. 32). She noted that treating records postdating the May, 2011 surgery did not suggest that Plaintiff experienced medication side effects (Tr. 33). She cited Plaintiff's July, 2011 report that he had experienced decreased back pain since undergoing the May, 2011 surgery (Tr. 33).

### III.    STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less than a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account

whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

### IV.   FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## V. ANALYSIS

### The Credibility Determination

Plaintiff argues that the hypothetical question to the VE did not account for his full degree of impairment. *Plaintiff's Brief* at 7-11, *Docket #9.* He contends, in effect, that the omission of critical limitations from the hypothetical question invalidates the Step Five finding that he was capable of a significant range of work. *Id.* at 7 (citing *Felisky v. Bowen,* 35 F.3d 1027 (6th Cir. 1994)).

Plaintiff does not identify any specific deficiencies in the hypothetical question. Instead, he argues that critical omissions in the hypothetical question stem from the ALJ's erroneous credibility determination. He contends that his testimony that he experienced trouble walking and standing due to back pain; required the use of a cane; and was unable to lift even 10 pounds ought to have been included in the hypothetical question to the VE. *Plaintiff's Brief* at 9 (citing Tr. 46).

The credibility determination, guided by SSR 96-7p, describes a two-step process for evaluating symptoms. "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment. . .that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 1996 WL 374186,*2 (July 2, 1996). The second prong of SSR 96-7p directs that whenever a claimant's allegations regarding "the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the testimony must be evaluated "based on a

consideration of the entire case record." *Id.* ²

The ALJ's credibility determination, and by extension the choice of hypothetical limitations, is well explained and well supported by the medical records.³ She acknowledged but rejected Plaintiff's alleged degree of limitation in walking, sitting, and lifting, citing September, 2010 examining records showing full strength in all extremities, a normal gait, and the absence of muscle spasms (Tr. 31). She also cited Dr. Lazzara's observations which included Plaintiff's ability to get on and off an examination table, walk, and stand on one foot without difficulty (Tr. 32). In support of her conclusion that the allegations of limitation made at the hearing were exaggerated, she cited Dr. Benton's July, 2011 records stating that Plaintiff's condition improved significantly after undergoing the May, 2011 surgery (Tr. 33). Although Plaintiff alleged that pain and medication side effects obliged him to nap for

---

²In addition to an analysis of the medical evidence, C.F.R. 404.1529(c)(3) lists the factors to be considered in making a credibility determination:

> (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms ... and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms."

³
In contrast, I note that while Plaintiff relies on his own testimony of disabling limitation, he does not cite any medical records to support the claims.

significant periods each day, the ALJ noted that the treating records did not reference either daily naps or medication side effects (Tr. 33). The ALJ observed that none of Plaintiff's treating sources opined that he was unable to perform sedentary work (Tr. 34). Because the ALJ's credibility determination is well supported, she was not required to include the rejected claims among the hypothetical restrictions. *See Stanley v. Secretary of Health and Human Services,* 39 F.3d 115, 118-119 (6th Cir.1994)(ALJ not obliged to include properly discredited allegations of limitation in hypothetical to VE). Likewise, Plaintiff's contention that the ALJ did not articulate the basis for the RFC found in the administrative opinion is defeated by the well reasoned rationale for rejecting some of the professed limitations and crediting others (Tr. 30-34).

Finally, although Plaintiff has not cited the medical evidence he submitted after the ALJ's decision, I have considered this evidence in making my recommendation (Tr. 358-381). To establish grounds for remand based on such material, the claimant must show that the "new evidence is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); see *Cotton v. Sullivan,* 2 F.3d 692, 696 (6th Cir.1993).

The newer evidence does not provide grounds for remand. First, Plaintiff has not provided "good cause" for its tardy submission. Further, he cannot show that the records are material to the ALJ's decision, even assuming he were able to establish good cause for the failure to timely file. Records created within the relevant period showing no numbness or

weakness would be unlikely to change the ALJ's findings (Tr. 378-379).   For different reasons, the evidence describing Plaintiff's condition subsequent to the January 6, 2012 administrative decision (Tr. 365, 372) does not provide grounds for remand.   Records pertaining to a claimant's decision after the date of the administrative opinion are intrinsically irrelevant to whether he was disabled on or before that date.  *See Sizemore v. Secretary of Health & Human Services,* 865 F.2d 709, 712 (6th Cir.1988)(records related to a claimant's condition *after* the administrative decision not "material" to the ALJ's findings).   If Plaintiff believes that he can establish disability after the date of the decision, his remedy would be to apply for benefits for a new period.  *Id.*   As such, remand for consideration of the new evidence is not warranted.

In closing, my recommendation to uphold the Commissioner's decision should not be read to trivialize Plaintiff's physical conditions.  Still, the ALJ's determination that he was capable of performing a significant range of work was comfortably within the "zone of choice" accorded to the fact-finder at the administrative hearing level.  As such, it should not be disturbed by this Court.  *Mullen v. Bowen*, *supra*.

## VI.   CONCLUSION

I recommend that Defendant's Motion for Summary Judgment be GRANTED and that Plaintiff's Motion for Summary Judgment be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR

72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: June 23, 2014

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document was sent to parties of record on June 23, 2014, electronically and/or by U.S. mail.

<u>s/Carolyn M. Ciesla</u>
Case Manager to the
Honorable R. Steven Whalen
